NOT FOR PUBLICATION

```
DISTRICT COURT OF THE VIRGIN ISLANDS
    DIVISION OF ST. THOMAS AND ST. JOHN
              APPELLATE DIVISION
```

DESMOND L. MAYNARD,                  )
                                     )
        Appellant,                   )
                                     )
        v.                           ) D.C. Civ. App. No. 2005/171
                                     ) Re: Super. Ct. Civ. No.:244/1997
CARMELO RIVERA, Commissioner of      )
the Virgin Islands Department of     )
Labor, and CHERYL MARTIN-LIBURD,     )
                                     )
        Appellees.                   )
_____)

On appeal from the Superior Court of the Virgin Islands,
       The Honorable Edgar D. Ross, presiding

            Considered: December 14, 2007
                 Filed: July 19, 2010

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge of the District Court of the Virgin Islands; **RAYMOND L. FINCH** Judge of the District Court of the Virgin Islands; and **PATRICIA D. STEELE**, Judge of the Superior Court of the Virgin Islands, Division of St. Croix, sitting by designation.

ATTORNEYS:

**Shawn E. Maynard-Hahnfeld, Esq.**
St. Thomas, U.S.V.I.
    *For the appellant.*

**Alexander Dawson, Esq.**
St. Thomas, U.S.V.I.
    *For the appellees.*

   Judge Raymond L. Finch delivers the majority opinion, joined

by Judge Patricia D. Steele.

Chief Judge Curtis V. Gómez wrote a dissenting opinion.

# MEMORANDUM OPINION

Appellant, Desmond Maynard ("Maynard"), appeals the judgment of the Superior Court finding that Maynard wrongfully discharged appellee, Cheryl Martin-Liburd ("Martin-Liburd"), and awarding her back pay.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Martin-Liburd was employed as the legal secretary at Maynard's law office from March, 1995, to October 1, 1996. On September 30, 1996, Martin-Liburd received cash in lieu of her paycheck.[1] At or about the same time, Martin-Liburd was presented with a paycheck for her to endorse and return to Viola Carter, the office manager. Martin-Liburd refused to endorse the check because the payor had not endorsed the check. Martin-Liburd needed a copy of a valid check, signed on the front by the payor, in order to apply for and receive financial assistance.

On October 1, 1996, Martin-Liburd was approached by Maynard who requested that she endorse the back of the check to

---

[1] Maynard testified that this was a customary practice at his firm as a convenience to employees.

acknowledge the receipt of cash in lieu of her paycheck. The front of the check was not signed by the payor, Maynard. Martin-Liburd again refused to endorse the check. Maynard then told Martin-Liburd, "if you are not going to sign it, you have to leave the desk, leave the job." (App. 12.)

Martin-Liburd left the office and filed a complaint against Maynard with the Department of Labor. In her complaint, Martin-Liburd alleged wrongful discharge in violation of the Wrongful Discharge Act ("the Act" or "WDA"), V.I. CODE ANN. tit. 24, § 76 et seq.

A hearing was held before a hearing officer of the Department of Labor. At the hearing, Martin-Liburd testified that her salary was $19,000 per year. Martin-Liburd also testified that she was currently unemployed and that she was receiving unemployment benefits in the amount of $193.[2] A copy of the paycheck dated September 30, 1996, was introduced as an exhibit. The paycheck showed that Martin-Liburd's pay was $543 for an unspecified period.

On February 19, 1997, Carmelo Rivera, the Commissioner of the Department of Labor ("Commissioner") issued an order finding that Martin-Liburd was wrongfully discharged. The order noted

---

[2] The record does not indicate whether this payment was weekly, bi-weekly or monthly.

that Martin-Liburd's salary was $365.38 per week. The Commissioner ordered Maynard to reinstate Martin-Liburd and awarded Martin-Liburd back pay in the amount of $5,215.32[3] less $2,509 in unemployment benefits. The order was subsequently amended to require the payment of back pay until Martin-Liburd was reinstated or obtained a job of equal or better pay.[4]

Maynard appealed that order to the Superior Court.[5] On August 23, 2005, the Superior Court issued a judgment affirming the Commissioner's order. The court ordered Maynard to pay Martin-Liburd back pay in the amount of $365.38 per week less $2,509 in unemployment benefits. This amount was awarded from October 1, 1996, until reinstatement or until Martin-Liburd found comparable employment. Maynard now appeals this judgment.

On appeal, Maynard raises two issues. First, whether the Superior Court erred in finding that substantial evidence existed to support the V.I. Department of Labor's decision that Martin-Liburd was wrongfully discharged. Second, whether the Superior

---

[3] This figure is based on a salary of $365.38 per week for fourteen weeks.

[4] The amendment was issued after Maynard filed his notice of appeal with the Superior Court.

[5] V.I. CODE ANN. tit. 5, § 1421, provides, in relevant part: "Any party to any proceeding before or by any officer, board, commission, authority, or tribunal may have the decision or determination thereof reviewed for errors therein as prescribed in this chapter and rules of court."

Court erred in affirming the Virgin Islands Department of Labor's award of back pay. (Appellant's Br. 2.)

**II. JURISDICTION AND STANDARD OF REVIEW**

This Court has jurisdiction to review final judgments and orders of the Superior Court of the Virgin Islands. *See* Revised Organic Act of 1954 § 23A; 48 U.S.C. § 1613a; 4 V.I.C. § 33; Act No. 6730 § 54(d)(1) (Omnibus Justice Act of 2005); *Gabriel Joseph v. People of the V.I.*, 2008 U.S. Dist. LEXIS 107654, at *17 (D.V.I. App. Div. Dec. 9, 2008).[6]

The Virgin Islands Code articulates the standard by which the Superior Court conducts its review: "The findings of the Commissioner [of Labor] as to the facts, if supported by substantial evidence, shall be conclusive." V.I. CODE ANN. tit. 24 § 70(b). "Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981) (internal citations omitted). Under this standard, the trial court reviews the entire record. *Id.*

---

[6] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

Our Court reviews the findings of the trial court, itself reviewing an administrative proceeding, under the traditional dichotomy: our review of the application of legal precepts is plenary, while we review the Superior Court's findings of fact for <u>clear error</u>. *Thomas v. Abamar-BB*, 934 F. Supp. 164, 166 (D.V.I. App. Div. 1996)(emphasis added). Clear error is shown where the trial court's determination is either "completely devoid of minimum evidentiary support displaying some hue of credibility or bears <u>no</u> rational relationship to the supportive evidentiary data." *Armstrong v. Armstrong*, 266 F. Supp. 2d 385, 397 (D.V.I. App. Div. 2003) (emphasis added).

### III. ANALYSIS

#### A. Wrongful Discharge

Pursuant to the Wrongful Discharge Act, discharge of an employee for grounds not listed in section 76(a) constitutes wrongful discharge. V.I. Code Ann. tit. 24, § 76(c). Liburd-Martin and Maynard agree that Maynard fired Liburd-Martin for failing to endorse her paycheck. They also agree that the paycheck was not signed on the front by Maynard, the payor. Liburd-Martin argues that termination under these circumstances is not permitted by the WDA. Maynard contends that such termination is permitted by the WDA, which allows an employer to dismiss an employee "who willfully and intentionally disobeys

reasonable and lawful rules, orders, and instructions of the employer." 24 V.I.C. § 76(a)(4).

In this case, Maynard often paid his employees in cash. To create a receipt for the cash payments, Maynard would issue each employee a paycheck, and have the employee endorse the back of the check. Martin-Liburd was fired when she refused to endorse the back of her paycheck.

Martin-Liburd testified that she refused to sign the check until it was first signed by Maynard. Martin-Liburd testified that she needed a copy of a valid paycheck containing Maynard's signature in order to prove her current income. Martin-Liburd needed this proof so that she could apply for and receive financial assistance from the Women, Infants and Children program, more commonly known as WIC, and to receive food stamps.

The hearing officer found that requiring Martin-Liburd to sign an invalid check was unreasonable, given that she needed a copy of a valid check in order to obtain financial assistance. The Superior Court, on review, found

> unreasonable Petitioner's instruction to Martin-Liburd to endorse a commercial paper, which at the time of presentation was an invalid commercial paper and/or non-negotiable instrument as it lacked Petitioner's signature. . . . Petitioner's method of salary payment unreasonably denied Martin-Liburd of proper documentation of her salary without Martin-Liburd's request and/or demand of such.

(Judgment 3., App. 241.)

There is no bright-line test to determine what constitutes "a reasonable employer order."[7] Indeed, state courts confronted with this question have reached varying conclusions, at times without articulating the standard by which they determined that an employer order was deemed 'reasonable' or 'unreasonable.' *See, e.g., Intown Props. v. Castro*, 2001 U.S. Dist. LEXIS 14253, at *18-19 (D.V.I. Sept. 5, 2001) (finding supervisor who was ordered to fire four temporary employees and refused, had refused a reasonable order); *Boatright v. Dothan Aviation Corp.*, 278 Ala. 142, 145 (Ala. 1965) (finding order by crop dusting company supervisor to mechanic employee that employee refrain from flying an airplane alone until he had received further flight training was a reasonable order); *Graham v. Daniels*, 269 Ark. 717, 720 (Ark. Ct. App. 1980) (finding employer's order that two employees stagger their lunch hours, instead of going together, so that telephones would not go unanswered, was reasonable); *Steinberg v. Unemployment Ins. Appeals Bd.*, 87 Cal. App. 3d 582, 587 (Cal. App. 1978) (where employee did not communicate with other employees, and was ordered to converse with other employees, but refused, order to indulge in verbal communication was not reasonable because lack of coworker interaction would not have

---

[7] This Court's exhaustive search has yielded no case law addressing an employer order that is factually similar to the one at issue here, whether in relation to 24 V.I.C. § 76(a) or under any other state or territorial law.

"deleterious effect on the company as a whole," nor was it "an expected or required condition of employment"); *Lacy v. California Unemployment Ins. Appeals Bd.*, 17 Cal. App. 3d 1128, 1131-32, 1135 (Cal. App. 1971) (where superior ordered demoted employee to train her new supervisor in her old duties, and employee refused, reviewing court found evidence could as easily point to order being reasonable as unreasonable, and that trial court's ruling that the order was unreasonable was sufficiently supported by the record to withstand review).

In our opinion, reasonable minds could disagree as to whether Maynard's order to Martin-Liburd was reasonable. The Superior Court concluded that, in light of the facts, Maynard's ordering his subordinate to sign an unendorsed check was unreasonable. Under our controlling standard if the trial court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse it even though we may be convinced that had we been sitting as the trier of fact, we would have weighed the evidence differently. *John F. Harkins Co. v. Waldinger Corp.*, 796 F.2d 657, 661-662 (3d Cir. 1986). In sum, "where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id*.

Given this governing standard and the record before us, we cannot say that it was clear error for the Superior Court to find that Martin-Liburd was wrongfully terminated for refusal to comply with an unreasonable order. Accordingly, we affirm the trial court's decision concerning Martin-Liburd's wrongful discharge, in violation of the WDA.

B. Back pay

Maynard argues that the Commissioner's award of back pay and the Superior Court's affirmation of that award were not supported by evidence introduced at the hearing. Where the Commissioner finds that the employer wrongfully discharged the employee, the Commissioner is required to issue an order requiring that the employee be reinstated with back pay. V.I. CODE ANN. tit. 24, § 77(c).[8] The employee's back pay award is reduced according to any interim earnings or amounts earnable with reasonable diligence. V.I. R. & REGS. tit. 24, § 77-1(B) (1991).[9]

---

[8] Section 77(c) provides:

> If upon all the testimony taken the Commissioner finds that the employer named in the complaint has wrongfully discharged an employee, the Commissioner shall state his findings and *shall* serve on the employer an order requiring that the employee be reinstated with back pay.

V.I. CODE ANN. tit. 24, § 77(c) (emphasis added).

[9] Section 77-1(B) provides:

> "Back pay" means the amount of wages, salary and/or other compensation Complainant would have earned from the date of discharge until the sooner of the date of compliance with an order

Maynard argues that Martin-Liburd failed to provide sufficient evidence to support an award of back pay. This argument is misguided. Pursuant to section 77(c), back pay may be awarded upon a finding of wrongful discharge. *See* V.I. R. & REGS. tit. 24, § 77(C). Here, there was a finding of wrongful discharge. As indicated above, that finding was not based upon clear error. As such, an award of back pay was warranted.

With regard to the amount of back pay, Maynard failed to object to Martin-Liburd's back pay calculation during the hearing. Thus, absent a showing of extraordinary circimstance, Maynard is statutorily barred from raising the instant objection now. V.I. CODE ANN. tit. 24, § 70(b) ("No objection that has not been urged before the Commissioner shall be considered by the Court unless the failure or neglect to urge such objection is excused because of extraordinary circumstances.").[10]

---

of reinstatement or date of commencement of comparable employment at or above the rate of pay of the position from which Complainant was wrongfully discharged with interest at the rate of seven per cent per annum accruing from the date of discharge. Interim earnings including unemployment insurance payments or amounts earnable with reasonable diligence by the Complainant shall operate to reduce the back pay otherwise allowable; provided, however, if a stay or continuance in the proceedings is granted at the request of the Complainant over the objection of the Respondent the period of any such stay or continuance shall be excluded from any award of back pay.

V.I. R. & REGS. tit. 24, § 77-1(B)(1991).

[10] Assuming *arguendo* that Maynard's objection was timely, Martin-Liburd testified that her salary at Maynard's office was

## IV. CONCLUSION

The Court will affirm the finding that Martin-Liburd was wrongfully discharged in violation of the WDA, and the award of back pay.

**GÓMEZ, Chief Judge,** *dissenting*.

Today, the majority adopts a standard where the needs of third parties may be considered when determining whether an employee is wrongfully discharged. Because I view the majority as creating a new wrongful discharge standard that runs counter to longstanding legal precepts in the field, I respectfully dissent.

In this case, Cheryl Martin-Liburd ("Martin-Liburd")

---

$19,000. The Commissioner and the Superior Court ordered back pay in the amount of $365.38 per week, less the amount she had received in unemployment benefits. An award of $365.38 was Martin-Liburd's weekly gross pay at her pre-termination salary.

The Superior Court's judgment on August 23, 2005, stated that that amount shall be awarded from October 1, 2006 until reinstatement or comparable employment. As such, the back pay award comports with the rules and regulations that prescribe calculation of back pay. *See* V.I. R. & REGS. tit. 24, § 77-1(B) ("'Back pay' means the amount of wages, salary and/or other compensation Complainant would have earned from the date of discharge until the sooner of the date of compliance with an order of reinstatement or date of commencement of comparable employment at or above the rate of pay of the position from which Complainant was wrongfully discharged . . . unemployment insurance payments or amounts earnable with reasonable diligence by the Complainant shall operate to reduce the back pay otherwise allowable . . . ."). Accordingly, the Superior Court's judgment was free from error.

received her bi-weekly pay of $543 in cash from her employer Desmond Maynard ("Maynard"). Maynard then asked Martin-Liburd to endorse the back of an unsigned check from Maynard to Martin-Liburd in the amount she had been paid. Martin-Liburd refused.

Martin-Liburd testified she needed a signed check as proof of income so that she could apply for and receive financial assistance from the Women, Infants and Children program, more commonly known as WIC, and to receive food stamps. (App. 42-44, 51.) Martin-Liburd testified that she "found [the unsigned pay check] to be a problem when I needed a copy of the check to verify my income to get some help, some public help." (*Id.* at 40.) Martin-Liburd testified that Maynard refused to sign the front of the check, making it valid and useful for her purpose, so she refused to endorse the back of it.[11]

Maynard, on the other hand, testified that he ordered Martin-Liburd to endorse the check to create a receipt for the salary payment she was given in cash. Discussing why he had his employees endorse checks showing how much they had been paid in cash, Maynard testified,

> to me that was my proof that the money had been paid in case someone said later on, well, you didn't pay me,

---

[11] At the hearing below, Martin-Liburd introduced a copy of the check. The check is dated September 30, 1996, and shows that Martin-Liburd's pay for the period was $543. (App. 174.) The space on the check for a payor's signature is blank.

> cash is written on the thing there. If somebody says
> you didn't pay me I wouldn't have any proof. But when
> I have your endorsement, the check, that was my office
> – that was my proof.

(*Id.* at 11.) In the face of Martin-Liburd's failure to comply with Maynard's direction to endorse the check showing how much she had been paid in cash, Maynard fired Martin-Liburd.

At issue is whether the Superior Court erred when it decided that Maynard's order to Martin-Liburd to endorse the check was unreasonable, and as such, whether Martin-Liburd was wrongfully discharged for refusing to comply with that order.

The Superior Court found that Maynard's request was unreasonable on its face and that it "unreasonably denied Martin-Liburd of proper documentation of her salary . . . ." (App. 241.) The salary documentation was required by a third party. The majority regards this conclusion as supported by substantial evidence. Because I am unaware of any legal support for that position, I disagree.

Under the Wrongful Discharge Act, V.I. CODE ANN. tit. 24, § 76 *et seq.* ("WDA"), the plaintiff carries the initial burden to establish a *prima facie* case of wrongful discharge.[12] *Rajbahadoorsingh v. Chase Manhattan Bank*, 168 F. Supp. 2d 496,

---

[12] The majority fails to address the *McDonnell Douglas* burden shifting framework appropriate to analysis of Martin-Liburd's WDA claim, and thus fails to consider if or how Martin-Liburd met her initial WDA claim burden.

505 (D.V.I. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). That *prima facie* case must consist of a showing, by a preponderance of the evidence, that the plaintiff: (1) was an employee; (2) of a covered employer; (3) who was discharged; and (4) the discharge was wrongful. *Id.* "Once the plaintiff establishes this presumption, the burden of production shifts to the employer to articulate some legitimate, statutorily-approved reason for the plaintiff's discharge[,]" and an acceptable showing is limited to "those statutorily-approved reasons listed in 24 V.I.C. § 76." *Id.* (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). If the employer offers a statutorily-approved reasons for its action, the burden shifts back to the plaintiff. *Id.*

In this case, Maynard attempted to meet his burden by showing that he fired Martin-Liburd because she refused to comply with a reasonable order – to sign the back of a check in lieu of a receipt. The case law cited by the majority to support a finding of unreasonableness, fails to do so. Rather, the authority on which the majority relies suggests that a reasonableness finding is appropriate where an employer orders an employee to complete administrative or safety-related tasks, such as firing an employee, training, or complying with a work schedule. *See, e.g., Intown Props. v. Castro*, 2001 U.S. Dist.

LEXIS 14253, at *18-19 (D.V.I. Sept. 5, 2001) (finding supervisor who was ordered to fire four temporary employees and refused, had refused a reasonable order); *Boatright v. Dothan Aviation Corp.*, 278 Ala. 142, 145 (Ala. 1965) (finding order by crop dusting company supervisor to mechanic employee that employee refrain from flying an airplane alone until he had received further flight training was a reasonable order); *Graham v. Daniels*, 269 Ark. 717, 720 (Ark. Ct. App. 1980) (finding employer's order that two employees stagger their lunch hours, instead of going together, so that telephones would not go unanswered, was reasonable).

However, where the order strays from the administrative or safety-related, into social, such orders are generally not reasonable. *See, e.g., Steinberg v. Unemployment Ins. Appeals Bd.*, 87 Cal. App. 3d 582, 587 (Cal. App. 1978) (where employee did not communicate with other employees, and was ordered to converse with other employees, but refused, order to indulge in verbal communication was not reasonable because lack of coworker interaction would not have "deleterious effect on the company as a whole," nor was it "an expected or required condition of employment"). Significantly, the case law cited by the majority does not support a finding of unreasonableness where an employer order commands an employee to perform an administrative duty.

It is *de rigeur* in business to demand some form of receipt in exchange for a cash payment. Maynard's order to endorse the back of a check that he himself had not signed, in order to create a receipt, was no more unreasonable than requiring an employee to sign in and out of work, or requiring an employee to sign accurate travel vouchers. *See, e.g., Kalenevitch v. Commonwealth, Unemp. Comp. Bd. of Review*, 109 Pa. Commw. 549, 550-551 (Pa. Commw. Ct. 1987) (affirming finding that employee had refused to comply with reasonable orders to follow company's sign-out slip procedure); *In re Chillious*, 3 A.D.3d 655, 655-656 (N.Y. App. Div. 2004) (affirming decision that employee had engaged in behavior that disqualified her from unemployment benefits by refusing to follow normal sign-out procedures at the end of her shift); *Lake County Assessor's Office v. Review Bd. of Indiana Dep't of Employment & Training Serv.*, 561 N.E.2d 754, 755 (Ind. 1990) (noting board finding that employee refused a reasonable supervisor request when he would not correct signed travel vouchers so they accurately reflected mileage traveled).

Whether Martin-Liburd needed the check to serve as proof of her salary is beside the point. Our focus, in this context, should be on the request of the employer, not on the requirements of a third party entity – in this case the WIC. Maynard's request was meant to facilitate administrative record keeping,

and like similar requests, was entirely reasonable.

Further, the Superior Court's reasoning regarding Maynard's request, which we are asked to review, is puzzling. On the one hand, the Superior Court acknowledged that the check[13] was invalid. It would seem that what the Superior Court referred to as a check was merely a piece of paper that conceivably could serve as a receipt. Remarkably, at the same time, the court held that it was unreasonable for Maynard to require his employee to sign what the trial court viewed as invalid paper. That pronouncement was made without reference to any authority that signing a piece of paper upon receipt of a payment was illegal or otherwise unreasonable.

That syllogism, at best, confounds logic. At worst, it creates a new standard for deeming an employer's order as unreasonable. Such a standard strays dangerously close to what is verboten for all courts - judicial legislation. Indeed, the Virgin Islands Legislature has not prohibited the conduct that

---

[13] Under Virgin Islands law, a negotiable instrument is defined, in part, as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order . . . ." V.I. CODE ANN. tit. 11A, § 3-104. An essential component of any negotiable instrument is a signature by the party making such a promise or order to pay. *See Id.* at § 3-103(a)(6) (defining an "Order" as "a written instruction to pay money signed by the person giving the instruction"); *Id.* at § 3-103(a)(9) (defining a "Promise" as a "written undertaking to pay money signed by the person undertaking to pay"). Because Maynard did not sign the check at issue here, it did not constitute a negotiable instrument. At most, the unsigned check, signed on the back by Martin-Liburd, would have served as a receipt acknowledging that she had received her pay.

the trial court condemns.

Moreover, the Superior Court focused on a purported denial of "proper documentation of . . . salary" because of Maynard's *"method of payment."* (App. 241) (emphasis added.) That focus suggests that the legislature has decreed that an employer is forbidden from paying an employee in cash. It also suggests that the law requires that wages must be paid in a check. Of course, the legislature has made no such pronouncement. Again, these suggestions, implicit in the trial court's findings, would seem to stray into judicial legislation.

Finally, the Superior Court noted that "[p]etitioner's method of salary payment unreasonably denied Martin-Liburd of proper documentation of her salary without Martin-Liburd's request and/or demand of such." (App. 241.) That conclusion is troubling as it castigates Maynard for not doing the very thing it seems he attempted to do – create a receipt. Martin-Liburd was paid in cash. Without her endorsement on the invalid check, nothing akin to a receipt would have existed, proper or otherwise.

I think the Superior Court committed error in affirming the Department of Labor because the Department's findings were not supported by sufficient evidence. I would reverse the Superior Court's decision finding that Martin-Liburd was wrongfully

discharged in violation of the WDA. I would also reverse the award of back pay.